### 16978.   DERRESAW *v.* THE STATE.

The evidence relied upon to convict the accused of cruelty in the driving or treatment of a horse did not authorize a conviction, the evidence being circumstantial and not sufficient to exclude every reasonable hypothesis save that of the guilt of the accused.

DECIDED MARCH 3, 1926.

Animals, 3 C. J. p. 73, n. 30.
Criminal Law, 16 C. J. p. 764, n. 54.

Accusation of cruelty to animal; from city court of Wrightsville—Judge Blount.  November 11, 1925.

The accusation charged that on October 14, 1925, Lawson Derresaw did "unlawfully, cruelly drive and cruelly treat" a described horse belonging to William Oliver. Oliver testified that on a Wednesday night, a little before sundown, he lent the horse to Lawson Derresaw to go· to Donovan, and that Derresaw promised to be back the next morning; that the horse "was in bad condition when he came back; he looked like he had been driven all night." The witness further testified: "Lawson said he promised to be back early and it was a mighty hot morning, when I asked him why he had driven so hard. . . I said, 'Put him in the lot and go to work.' He was in a sweat. I didn't see him again during that day. Next time I saw him he was stiff; his legs were stiff. He is still in bad condition; he has been damaged. I have only used him to knock around a bit since. His shoulder is stiff. He is in bad condition, but whether he got it that morning or the next time he carried him off, I don't know. He wasn't in a lather, but had been. His legs were stiff and are still stiff. . .
He is about twelve or fifteen years old. He was the family horse, gentle, fat, and pretty heavy. . . The horse is not accustomed to being driven on long distances. I am accustomed to drive him a distance of seven or eight miles. . . It is seven miles from my house to Harrison. I let him have the horse to go to Mr. Harrison's place at· Donovan. . . He was to come back early next morning, and he was back early. The horse is a free sweater; some horses sweat easier than others. . . He was wet with perspiration and was panting. I have never seen him pant before. He was jerky. He got back about light. . . I let him [the defendant] have the horse again. . . The horse was in bad shape when he brought him back the second time. He came back Saturday afternoon. I came here and signed for him to be prosecuted on November 5. . . I had Lawson prosecuted for treating my horse cruelly on the 14th day of October; that was Wednesday. The second time I let him have my horse I didn't know he had gotten him in that condition. . . I don't know whose driving caused that; he was in Lawson's possession. . . I don't know whether the horse was driven Thursday or Friday night or not. I have various negroes on my farm; they could have come to my

barn; any of them that wanted him could have gotten him without my knowledge and driven him and put him back." "There was no sign of any whip on the horse, no bruises or the hide knocked off, nothing to show that he was mistreated except that he was stiff." Another witness testified that on the 14th of October, 1925, about dark, the defendant drove up to the house of the witness in a buggy with a horse of the kind described in the accusation; that the horse "looked like he had been driven unreasonably hard," and the witness said to him, "If you drive that horse like that you will kill him;" that the defendant said the horse got scared up at the church (500 yards from the house of the witness) and started to run; the horse was wet with sweat and was breathing fast; the witness did not see any whales on him. Another witness testified that he was present when the defendant hitched up the horse; that the horse was driven severely on Wednesday night, but the defect did not show up until Saturday; he did not hear any complaint until Saturday; "some mules and horses get stove up and you don't know why." The defendant, in his statement at the trial, denied that he had driven the horse hard or mistreated him, and said that "anybody could drive him one mile or two and he would be wet with sweat."

C. S. Claxton, for plaintiff in error.

J. Roy Rowland, solicitor, contra.

LUKE, J. Lawson Derresaw was convicted of cruelly treating a horse. The State relied upon circumstantial evidence that the defendant drove the horse too hard. The evidence showed that "there was no sign of any whip on the horse, no bruise, nor the hide knocked off." It showed also that the prosecutor prosecuted Derresaw in this case because he (Derresaw) had been acquitted on another charge, while the prosecutor's negro was fined $50. The evidence relied upon for a conviction was not sufficient to exclude every reasonable hypothesis save that of the guilt of the accused, and the court erred in overruling the motion for a new trial.

Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.